**PUBLIC SERVICE COMPANY OF COLORADO, FORT ST. VRAIN STATION, Petitioner,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, and William K. Reilly, Administrator, Respondents.**

**No. 90–9505.**

United States Court of Appeals, Tenth Circuit.

Nov. 25, 1991.

Timothy J. Flanagan (Robert J. Eber, Lloyd W. Landreth of Kelly, Stansfield & O'Donnell, James R. McCotter, Senior Vice President and Gen. Counsel, Public Service Co. of Colorado, with him on the brief), Denver, Colo., for petitioner.

Karen L. Egbert, Atty., U.S. Dept. of Justice, Environmental Defense Section (Richard B. Stewart, Asst. Atty. Gen., Barry M. Hartman, Acting Asst. Atty. Gen., U.S. Dept. of Justice, Environmental & Natural Resources Div., Anne M. Ryan, Atty., E. Donald Elliott, Gen. Counsel, Susan C. Lepow, Associate Gen. Counsel, Office of Gen. Counsel, E.P.A., Washington, D.C., Marion Yoder, Attorney, Office of Regional Counsel, E.P.A., Denver, Colo., with her on the brief), for respondents.

Before BALDOCK, BARRETT and EBEL, Circuit Judges.

## PER CURIAM.

We have only one issue before us: whether the Federal Water Pollution Control Act of 1972 (Clean Water Act), codified at 33 U.S.C. §§ 1251–1387, authorizes the Environmental Protection Agency (EPA) to impose effluent limitations on the internal waste streams of a National Pollutant Discharge Elimination System (NPDES) permittee. Every entity that wishes to discharge pollutants into the waters of the United States must obtain a NPDES permit from EPA or an authorized state agency. *See* 33 U.S.C. §§ 1311(a) & 1342; 40 C.F.R. §§ 122–136, 400–501. NPDES permits impose a variety of restrictions on polluting entities, and these restrictions include effluent limitations. In this case, the NPDES permit at issue contains effluent limitations on the internal piping system of the Fort St. Vrain Station, a power plant operated by petitioner, Public Service Company of Colorado.

EPA placed the internal piping system effluent limits in the Fort St. Vrain NPDES permit pursuant to the EPA internal waste stream regulation. 40 C.F.R. § 122.45(h) (1990). The regulation provides for effluent limitations on internal waste streams when it would be "impractical or infeasible" to monitor the effluent at the point of discharge into the waters of the United States. *Id.*[1] Petitioner brought a facial challenge to the regulation before the EPA Regional Administrator, contend-

---

**1.** The regulation provides:

(h) *Internal waste streams.*

(1) When permit effluent limitations or standards imposed at the point of discharge are impractical or infeasible, effluent limitations or standards for discharges of pollutants may be imposed on internal waste streams before mixing with other waste streams or cooling water streams. In those instances, the monitoring required by § 122.44(i) shall also be applied to the internal waste streams.

(2) Limits on internal waste streams will be imposed only when the fact sheet under § 122.56 sets forth the exceptional circumstances which make such limitations necessary, such as when the final discharge point is inaccessible (for example, under 10 meters of water), the wastes at the point of discharge are so diluted as to make monitoring impracticable, or the interferences among pollutants at the point of discharge would make detection or analysis impracticable.

40 C.F.R. § 122.45 (1990).

ing that the regulation was ultra vires.[2] The Regional Administrator refused to grant a hearing on the matter, and the EPA Administrator affirmed the denial on appeal. Petitioner seeks review of the EPA Administrator's final order. We have jurisdiction pursuant to 33 U.S.C. § 1369(b).

Petitioner contends that the plain language, structure and legislative history of the Clean Water Act indicate a clear Congressional intent to restrict EPA's authority to impose effluent limitations to the physical point of discharge into the waters of the United States. Given the clarity of Congressional intent, petitioner urges us to exercise plenary review and declare the internal waste stream regulation ultra vires.

We have reviewed petitioner's arguments, and find them unpersuasive. Upon study of the Clean Water Act and its legislative history, we find no clear Congressional or Presidential intent expressly forbidding EPA from imposing internal waste stream effluent limitations when such limitations would be impracticable to monitor at the end of the pipe. Therefore, we owe substantial deference to EPA's interpretation of its authority. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984); *Oklahoma v. Environmental Protection Agency,* 908 F.2d 595, 598–99 (10th Cir.1990), *cert. granted,* —— U.S. ——, 111 S.Ct. 1412, 113 L.Ed.2d 465 (1991).

Addressing arguments similar to petitioner's, and applying the *Chevron* standard of review, the Fifth Circuit has held that the internal waste stream regulation falls within EPA's authority under the Clean Water Act to monitor and impose limitations on pollutants that eventually will be discharged into the waters of the United States. *Texas Municipal Power Agency v. Administrator,* 836 F.2d 1482, 1486–90 (5th Cir.1988). We agree with the Fifth Circuit's analysis of the pertinent Clean Water Act provisions and its conclusion that the internal waste stream regulation is a valid exercise of EPA authority.

REVIEW DENIED.

---

2. The original NPDES permit in this case was issued by the Colorado Water Quality Control Division (CWQCD), an EPA approved State agency. EPA, exercising its oversight authority, objected to the permit. *See* 33 U.S.C. § 1342(d)(2); 40 C.F.R. § 123.44. Neither CWQCD nor any interested party responded to EPA objections within the statutorily prescribed period; therefore, exclusive permitting authority transferred to EPA. *See* 33 U.S.C. § 1342(d)(4); 40 C.F.R. § 123.44(h)(1). Petitioner challenged the resulting EPA draft permit, requesting an "evidentiary hearing" before the Regional Administrator. *See* 40 C.F.R. § 124.74(a). Because the request involved only legal issues (whether the regulation was ultra vires), the Regional Administrator denied review pursuant to EPA regulations. *See id.* § 124.74(b)(1).